*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0229**

Teric Alan Carlson, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed September 2, 2014
Affirmed
Peterson, Judge**

Brown County District Court
File No. 08-CV-12-574

Philip Jay Elbert, Fairmont, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory Christopher Mattson, Assistant Attorney General,
St. Paul, Minnesota (for respondent)

Considered and decided by Peterson, Presiding Judge; Reyes, Judge; and
Klaphake, Judge.[*]

# UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from a district court order sustaining the revocation of appellant's

driver's license under the implied-consent law, appellant argues that the odor of alcohol

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

emanating from the passenger compartment of the car he was driving did not provide a basis for the deputy sheriff to expand the traffic stop by asking him to perform field sobriety tests. We affirm.

## FACTS

At approximately 1:30 a.m., Deputy Matthew Ibberson of the Brown County Sheriff's Department stopped a car because the tint on its windows was "extremely dark." *See* Minn. Stat. § 169.71, subd. 4(a)(3) (2012) ("No person shall drive or operate any motor vehicle required to be registered in the state of Minnesota upon any street or highway . . . when any side window or rear window . . . has a light transmittance of less than 50 percent plus or minus three percent in the visible light range . . . ."). Ibberson walked to the passenger side of the vehicle and, as soon as the passenger-side window was rolled down, he "smelled a strong odor of alcoholic beverage coming out of the vehicle."

Appellant Teric Carlson was driving the vehicle, and a female passenger sat in the passenger's seat. Ibberson explained why he had stopped the car, and he asked appellant whether he had been drinking. Appellant said that he had not been drinking and stated that he was giving someone a ride home from the bar where he was working that night.

After going to his squad car to run appellant's driver's license through police records, Ibberson returned and asked appellant if he would perform field sobriety tests. Appellant got out of his car, and Ibberson noticed that his eyes were glassy and his breath smelled of alcohol. Appellant refused to perform field sobriety tests, but he asked to take a breath test. Ibberson administered a preliminary breath test, and the result was .138.

2

Ibberson arrested appellant for driving while impaired and took him to the Sleepy Eye Police Department, where he read appellant the implied-consent advisory. Ibberson then brought appellant to Sleepy Eye Medical Center for a blood draw; appellant's alcohol concentration was .13.

Respondent Commissioner of Public Safety revoked appellant's driving privileges, and appellant moved to rescind the revocation, arguing that Ibberson improperly expanded the scope of the stop. The district court sustained the revocation.

Appellant's counsel wrote to the district court, asking it "to correct a legal finding" in the order. Counsel wrote: "In the Order, the Court stated that the odor of alcohol emanating from Petitioner's vehicle '…provided a basis for some further investigation into the possibility that Petitioner was driving while impaired.' I submit that this is an incorrect statement of the law." The district court reaffirmed its order and explained that it likely wrote the statement appellant's counsel quoted "because this is an impaired driving case and those were the facts of this case. A better phrasing might have been that the odor of alcohol from Petitioner's vehicle 'provided a basis for further investigation into other possible illegal activity,' which it certainly did."

Almost 11 months later, appellant brought a motion to reopen the matter under Minn. R. Civ. P. 60.02, which the district court denied. This appeal followed.[1]

---

[1] Because the record does not show that any party served written notice of the filing of any of the district court's orders, the 60-day period for filing an appeal from the orders did not begin to run, and the appeal from the order sustaining the revocation of appellant's driver's license is properly before us. *See* Minn. R. Civ. App. P.104.01, subd. 1 (appeal may be taken from appealable order within 60 days after service by any party of written notice of its filing).

3

# DECISION

Appellant argues that the district court erred when it found that the odor of alcoholic beverage coming from inside appellant's car provided a basis for further investigation into other possible illegal activity. "We undertake a de novo review to determine whether a search or seizure is justified by reasonable suspicion or by probable cause." *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005). "The district court's findings of fact are reviewed for clear error." *Id.*

In interpreting article I, section 10, of the Minnesota constitution, the supreme court has explicitly adopted the principles and framework of *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), for evaluating the reasonableness of seizures during traffic stops even when a minor law has been violated. *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004). Under these principles and framework:

> The basis for intrusion must be reasonable so as to comply with article I, section 10's general proscription against unreasonable searches and seizures. To be reasonable, the basis must satisfy an objective test: would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate. The test for appropriateness, in turn, is based on a balancing of the government's need to search or seize and the individual's right to personal security free from arbitrary interference by law officers. Finally, it is the state's burden to show that a seizure was sufficiently limited to satisfy these conditions.

*Id.* at 364-65 (Minn. 2004) (citations and quotations omitted).

> Article I, Section 10 of the Minnesota Constitution requires that each incremental intrusion during a traffic stop be tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable

4

cause, or (3) reasonableness, as defined in *Terry*. Furthermore, the basis for the intrusion must be individualized to the person toward whom the intrusion is directed.

*Id.* at 365.

Ibberson's request that appellant submit to field sobriety testing was not tied to and justified by the original purpose of the stop, which was to investigate the tint of appellant's car windows. Ibberson made the request only after he detected the odor of alcohol. But because an odor of alcohol may be present even when a driver is not impaired, Ibberson's detection of an alcohol odor did not establish probable cause that appellant was driving while impaired. *See State v. Johnson*, 314 N.W.2d 229, 230 (Minn. 1982) (stating that "[t]he test of probable cause to arrest is whether the objective facts are such that under the circumstances 'a person of ordinary care and prudence (would) entertain an honest and strong suspicion' that a crime has been committed." (quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn. 1978)).

Thus, the issue before us is whether the incremental intrusion of asking appellant to submit to field sobriety testing was reasonable. That is, would the facts available to Ibberson at the moment he asked appellant to perform field sobriety tests warrant a person of reasonable caution in the belief that the request was appropriate? Whether the request was appropriate is based on a balancing of the government's need to prevent impaired driving and appellant's right to be free from arbitrary interference by Ibberson. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts,

5

reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. All that is required is that the intrusion is not the product of mere whim, caprice, or idle curiosity. *Marben v. Comm'r of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980).

Ibberson testified that at the moment he asked appellant to perform field sobriety tests he knew that appellant was driving a car with one passenger at 1:30 a.m. after leaving the bar where he had been working that night, and there was a strong odor of alcohol emanating from the car. Ibberson did not know whether the source of the odor was appellant, his passenger, or both of them. These facts would warrant a person of reasonable caution in the belief that asking appellant to perform field sobriety tests to determine whether he was under the influence of alcohol was appropriate. The expansion of the stop was limited to this purpose.

**Affirmed**.