IN THE SUPREME COURT OF IOWA

 No. 15 / 04-1698

 Filed March 31, 2006

STATE OF IOWA,

 Appellee,

vs.

WALTER JUNIOR HOSKINS, III,

 Appellant.

 On review from the Iowa Court of Appeals.

 Appeal from the Iowa District Court for Black Hawk County, Jon Fister
and K.D. Briner, Judges.

 The State seeks further review of a court of appeals decision
suppressing evidence found in a warrantless search of the defendant’s
vehicle. DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT
AFFIRMED.

 Linda Del Gallo, State Appellate Defender, and Robert P. Ranschau,
Assistant State Appellate Defender, for appellant.

 Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant
Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz,
Assistant County Attorney, for appellee.

WIGGINS, Justice.
 In this appeal, the State seeks further review of a court of appeals
decision suppressing evidence found in a warrantless search of the
defendant’s vehicle. Because probable cause and exigent circumstances
supported the search, we vacate the decision of the court of appeals. As a
consequence of vacating the court of appeals’ decision, we must also decide
if the defendant’s trial counsel was ineffective for failing to move for
disclosure of the identity of the confidential informant and for failing to
raise a specific sufficiency-of-the-evidence claim during the defendant’s
motion for judgment of acquittal. On our review, we find the defendant’s
trial counsel was not ineffective. Therefore, we affirm the judgment of
the district court.
 I. Background Facts and Proceedings.
 During the early morning hours of September 5, 2003, a confidential
informant visited the Waterloo police station and relayed information to
patrol sergeant Mark Meyer. The informant reported Walter Junior Hoskins,
III was at a bar located two blocks from the station with crack cocaine on
his person for sale. Meyer stated the informant had seen Hoskins with the
drugs but Meyer did not know whether Hoskins had the drugs out looking at
them or whether he was making a sale. The informant described the vehicle
Hoskins was driving and said Hoskins parked it in front of the bar.
 Within twenty to thirty minutes of receiving the informant’s
information, Meyer dispatched other police officers to the bar. The
officers returned to the station and corroborated part of the informant’s
information, that the vehicle being driven by Hoskins was parked in front
of the bar where the informant said it would be, but did not corroborate
that Hoskins had drugs on his person. After reporting to Meyer, one of the
officers, Greg Erie, drove to a parking ramp overlooking the bar. When he
arrived at the top of the ramp, he observed the vehicle leaving the bar.
Erie immediately notified other officers as to the direction the vehicle
was headed.
 Officer Michael Rasmussen’s police car caught up to Hoskins’ vehicle
just as it drove through a red light. Rasmussen stopped the vehicle and
informed the driver he stopped the vehicle for running a red light. There
were two people in the vehicle, a driver, Hoskins, and a front passenger,
Rodney Dejuan Berry. Rasmussen asked Hoskins for his license,
registration, and insurance information. Upon receiving this
documentation, Rasmussen returned to his car and called the dispatcher
asking for backup and a canine unit.
 Rasmussen returned to Hoskins’ vehicle and asked him to exit it.
Backup officers arrived at the stop. Hoskins consented to a search of his
person and no contraband was found on his person. While the other officers
were present, Rasmussen searched Berry and found no contraband on his
person. Rasmussen then asked Hoskins if he could search the vehicle.
Hoskins refused to consent to a search of his vehicle. Rasmussen then
informed Hoskins he had requested a canine unit to come to the scene so the
drug dog could sniff the vehicle. He told Hoskins if the drug dog
indicated the vehicle contained narcotics, he would search the vehicle.
Rasmussen was then notified that the canine unit was tied up with another
stop. At this point, Meyer told Rasmussen they had probable cause to
search the vehicle.
 Rasmussen searched the vehicle and found a white towel beneath the
driver’s seat, which contained two plastic bags, one containing nine
smaller bags of crack cocaine (0.96 grams) and the other containing ten
smaller bags of powder cocaine (3.18 grams). The canine unit eventually
arrived and the rest of the vehicle was searched but nothing more was
found. The police arrested Hoskins and brought him to the station.
Hoskins received his Miranda warnings and he told Meyer he wanted to be
charged with simple possession. Hoskins acknowledged the substances found
in the vehicle were his but did not acknowledge he was using cocaine.
Hoskins also said there was not anything going on that he did not know
about as to the drug trade.
 The State charged Hoskins with two drug crimes: (1) possession of
cocaine base with the intent to deliver in violation of Iowa Code section
124.401(1)(c) (2003), and being a second offender and an habitual offender
under Iowa Code sections 124.411, 902.8, and 902.9; and (2) possession of
salt of cocaine with the intent to deliver in violation of Iowa Code
section 124.401(1)(c), and being a second offender and an habitual offender
under Iowa Code sections 124.411, 902.8, and 902.9.
 Hoskins filed a motion to suppress challenging the legality of the
stop and search of his vehicle. Hoskins claimed the police stopped his
vehicle without reasonable suspicion, the police did not have a warrant to
search the vehicle, and there was no probable cause to search the vehicle.
The district court denied Hoskins’ motion to suppress. The court concluded
probable cause supported the search of the vehicle in view of Meyer’s
experience and the reliable informant’s tip.
 The case proceeded to a jury trial. At trial, Hoskins’ trial counsel
moved for a judgment of acquittal stating “specifically we do not believe
that the State has presented evidence which given in the light most helpful
to the State would be adequate to find [Hoskins] guilty of possession with
intent to deliver either crack cocaine or powdered cocaine.” The State
resisted the motion and the court overruled it.
 The jury found Hoskins guilty of both crimes. The court entered
judgment and sentenced Hoskins to terms of incarceration not to exceed
thirty years on each conviction, to be served concurrently.
 Hoskins appealed. We transferred the case to our court of appeals.
The court of appeals reversed the district court’s ruling on the motion to
suppress. We granted further review. We will discuss other facts bearing
on Hoskins’ contentions on appeal in our analysis of the legal issues
presented.
 II. Issues.
 Hoskins raises two issues on appeal. First, he asserts the district
court erred in overruling his motion to suppress. Second, Hoskins claims
his trial counsel provided ineffective assistance of counsel in failing to
move for disclosure of the identity of the confidential informant and in
failing to raise a specific sufficiency-of-the-evidence claim during the
motion for judgment of acquittal.
 III. Scope of Review.
 The State requested further review claiming the court of appeals
erred in suppressing the drugs found in this case under the Fourth
Amendment to the United States Constitution and article I, section 8 of the
Iowa Constitution. Our review is de novo when we assess an alleged
violation of constitutional rights. State v. Freeman, 705 N.W.2d 293, 297
(Iowa 2005). We are required to review the record and independently
evaluate the totality of the circumstances. State v. Turner, 630 N.W.2d
601, 606 (Iowa 2001). We are not bound by the fact findings of the
district court, but we do give deference to those findings because the
district court had the opportunity to evaluate the credibility of the
witnesses. Id.
 Hoskins’ claims involving ineffective assistance of counsel have
their basis in the Sixth Amendment to the United States Constitution and
are reviewed de novo. State v. Wills, 696 N.W.2d 20, 22 (Iowa 2005).
Although these claims are typically preserved for postconviction relief
actions, “we will address such claims on direct appeal when the record is
sufficient to permit a ruling.” Id.
 IV. Analysis.
 A. Motion to Suppress. Our federal and state constitutions protect
people from unreasonable searches and seizures. U.S. Const. amend. IV;
Iowa Const. art. I, § 8; State v. Cline, 617 N.W.2d 277, 281 (Iowa 2000),
abrogated on other grounds by Turner, 630 N.W.2d at 606 n.2. Cases
interpreting the federal constitution are persuasive in our interpretation
of the state constitution because the federal and state search-and-seizure
clauses are similar. See State v. Olsen, 293 N.W.2d 216, 219-20 (Iowa
1980). Decisions interpreting the federal constitution, however, are not
binding on us with respect to the Iowa Constitution. Id. Because Hoskins
has not given us reason to do otherwise, and the facts of this case do not
give us a basis to distinguish the protections of our state constitution
from those of the federal constitution, our discussion of the merits of
Hoskins’ suppression motion applies equally to his state and federal
constitutional claims. State v. Reinders, 690 N.W.2d 78, 82 (Iowa 2004);
State v. Lewis, 675 N.W.2d 516, 522-23 (Iowa 2004).
 The Fourth Amendment to the United States Constitution assures “[t]he
right of the people to be secure in their persons, houses, papers, and
effects, against unreasonable searches and seizures.” U.S. Const. amend.
IV. The Fourth Amendment is binding on the states through the Fourteenth
Amendment of the federal constitution. Freeman, 705 N.W.2d at 297.
“Warrantless searches and seizures are per se unreasonable, unless one of
the few carefully drawn exceptions to the warrant requirement exists.” Id.
 The recognized exceptions include “searches based on consent, plain view,
probable cause coupled with exigent circumstances, searches incident to
arrest, and those based on the emergency aid exception.” Lewis, 675 N.W.2d
at 522. The State must prove by a preponderance of the evidence that a
recognized exception to the warrant requirement applies. State v. Cadotte,
542 N.W.2d 834, 836 (Iowa 1996), abrogated on other grounds by Turner, 630
N.W.2d at 606 n.2. The assessment of a police officer’s conduct is based
on an objective standard. Freeman, 705 N.W.2d at 297. A search’s legality
does not depend on the actual motivations of the police officers involved
in the search. Id.
 The State claims the exception to the warrant requirement applicable
to this case is probable cause coupled with exigent circumstances. Exigent
circumstances exist when a vehicle is mobile and its contents may not be
found again if a warrant is required. State v. Carter, 696 N.W.2d 31, 37
(Iowa 2005). At the suppression hearing, Hoskins’ trial counsel conceded
exigent circumstances existed at the time the officers searched Hoskins’
vehicle due to the mobility of the vehicle.
 Additionally, it is well-settled law that a traffic violation, no
matter how minor, gives a police officer probable cause to stop the
motorist. State v. Aderholdt, 545 N.W.2d 559, 563 (Iowa 1996). An officer
observed Hoskins’ vehicle drive through a red light in violation of Iowa’s
traffic laws. Consequently, the officer clearly acted within his authority
in stopping Hoskins’ vehicle. Therefore, we will focus on whether the
police had probable cause to search the vehicle after it was lawfully
stopped.
 Probable cause exists to search a vehicle

 “when the facts and circumstances would lead a reasonably prudent
 person to believe that the vehicle contains contraband. The facts and
 circumstances upon which a finding of probable cause is based include
 ‘the sum total . . . and the synthesis of what the police [officer
 has] heard, what [the officer] knows, and what [the officer]
 observe[s] as [a] trained officer[ ].’ ”

State v. Gillespie, 619 N.W.2d 345, 351 (Iowa 2000) (omission in original)
(alterations in original) (citations omitted), abrogated on other grounds
by Turner, 630 N.W.2d at 606 n.2. The assessment of probable cause “ ‘is
based on probabilities and not mere suspicion,’ ” but it need not “rise to
the level of certainty beyond a reasonable doubt.” Carter, 696 N.W.2d at
37 (citation omitted). The probable cause needed by the officers to search
the vehicle in this case must be based on facts that would justify a
magistrate to issue a warrant, even though the officers had not actually
obtained a warrant. United States v. Ross, 456 U.S. 798, 809, 102 S. Ct.
2157, 2164-65, 72 L. Ed. 2d 572, 583-84 (1982). A probable cause finding
rests on a nexus between the criminal activity, the place to be searched,
and the items to be seized. State v. Davis, 679 N.W.2d 651, 656 (Iowa
2004).
 The State claims the officers had probable cause to search Hoskins’
vehicle when Meyer authorized the search. Consequently, we must determine
whether the totality of the circumstances available to Meyer at the time he
authorized the search would be enough to establish probable cause for the
issuance of a warrant to search the vehicle. See Illinois v. Gates, 462
U.S. 213, 238-39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983)
(holding the totality-of-the-circumstances standard is used in determining
whether probable cause has been established for the issuance of a search
warrant).
 At the time Meyer authorized the search, an informant had informed
him Hoskins had drugs in his possession at the bar and Hoskins’ vehicle was
parked outside of the bar. Meyer knew this informant for fifteen to twenty
years. Meyer testified this informant is a mature individual. Meyer also
testified the information provided by this informant in the past led to the
courts issuing several search warrants and the police department making
numerous arrests. Meyer further testified this informant had never given
false information in the past, had supplied information in the past well
over fifty times, and past information from this informant led to the
discovery of drugs and other contraband. Meyer also confirmed the
department pays this informant if the information proves helpful to the
police.
 Meyer corroborated the information given to him by the informant
concerning the location of Hoskins’ vehicle by sending officers to the bar.
 In addition to the information provided by the informant, Meyer was
familiar with Hoskins, his prior convictions for possession of drugs with
intent to deliver, and the vehicle he was using.
 When determining whether probable cause exists to issue a search
warrant, the Supreme Court stated:

 The task of the issuing magistrate is simply to make a practical,
 common-sense decision whether, given all the circumstances set forth
 in the affidavit before him, including the “veracity” and “basis of
 knowledge” of persons supplying hearsay information, there is a fair
 probability that contraband or evidence of a crime will be found in a
 particular place.

Id. at 238, 103 S. Ct. at 2332, 76 L. Ed. 2d at 548.
 In this case, a reliable informant with a favorable track record of
providing information to the authorities provided Meyer with the
informant’s firsthand observation of Hoskins at the bar with drugs in his
possession. See State v. Gogg, 561 N.W.2d 360, 365 (Iowa 1997) (finding a
confidential informant was credible for the issuance of a search warrant
where the information “revealed the informant had supplied information on
several prior occasions and had never been shown to have provided false
information,” and the information “was not public knowledge and the
informant personally saw [the defendants] in possession of [drugs]”).
Additionally, Meyer corroborated the information provided by the informant
when he sent officers to confirm Hoskins’ vehicle was parked outside the
bar. See State v. Weir, 414 N.W.2d 327, 332 (Iowa 1987) (explaining courts
making informant credibility determinations for the issuance of a search
warrant rely on various factors, one of which is the corroboration of the
informant’s information). Finally, Meyer was aware of Hoskins’ prior drug
convictions. See State v. Padavich, 536 N.W.2d 743, 748 (Iowa 1995)
(recognizing in making a determination of probable cause for the issuance
of a search warrant, several factors may be considered, such as “a
suspect’s history of involvement in the drug trade”). These facts are
sufficient to establish a fair probability that illegal drugs would be
found in Hoskins’ possession.
 Even so, Hoskins argues and the court of appeals agreed the
information provided by the informant did not establish a nexus between the
items the police seized—the drugs—and the place the police searched—the
vehicle. We disagree.
 The ninth circuit was confronted with a similar situation where an
affidavit in support of a search warrant application stated an informant
had purchased drugs at the defendant’s apartment, but provided no
information drugs were ever seen in the defendant’s vehicle. United States
v. Spearman, 532 F.2d 132, 133 (9th Cir. 1976). There the affidavit
included a statement from a police officer stating, “It is commonplace for
dealers of heroin to have heroin that is packaged for sale in the place
where they live or sell from, in their vehicles or on their persons.” In
reaching the conclusion probable cause existed to issue a search warrant to
search the defendant’s vehicle, the court pointed out it had upheld many
searches where

 “the nexus between the items to be seized and the place to be searched
 rested not on direct observation . . . but on the type of crime, the
 nature of the [items to be seized], the extent of the suspect’s
 opportunity for concealment, and normal inferences as to where a
 criminal would be likely to hide [the items to be seized].”

Id. (omission in original) (citations omitted). The court found even
though the informant’s direct observation only connected the drugs with the
defendant’s apartment, the magistrate was required to interpret the
affidavit in a common-sense fashion. Id. Therefore, “the magistrate was
justified in inferring probable cause that [the defendant] would also have
heroin concealed in his automobile.” Id.
 We have adopted this reasoning in an analogous situation. State v.
Groff, 323 N.W.2d 204, 212 (Iowa 1982). In Groff, the affidavit disclosed
the defendants’ field contained a large quantity of marijuana plants in
various stages of growth. Id. The affidavit also included a statement
from a state narcotics agent that in his experience as a narcotics
investigator, individuals who manufacture or distribute marijuana need “an
area to refine, manicure and store said substances during various stages of
drying prior to use and distribution.” Id. Based on this affidavit, we
affirmed the magistrate’s issuance of a search warrant allowing officers to
search the defendants’ residence. Id. In doing so, we reaffirmed the
principle that there must be a nexus between the place to be searched and
the items to be seized. Id. We also confirmed the notion that direct
observation is not required to establish this nexus, as it “can be found by
considering the type of crime, the nature of the items involved, the extent
of the defendant’s opportunity for concealment, and the normal inferences
as to where the defendant would be likely to conceal the items.” Id.; see
also State v. Leto, 305 N.W.2d 482, 486 (Iowa 1981) (holding it was
reasonable for a magistrate to infer that a suspect in an automobile theft
operation would keep items relating to stolen vehicles at a repair shop
located at his residence); State v. Iowa Dist. Ct., 247 N.W.2d 241, 248
(Iowa 1976) (holding it was reasonable for a magistrate to infer from
circumstances including the presence of stolen property in a truck that the
remainder of the stolen property would be found at the occupants’
residence).
 At the suppression hearing, Meyer testified most drug dealers take
their drugs with them when they leave a bar, rather than leaving the drugs
behind. Rasmussen testified in his experience with narcotics stops people
hide their drugs in their vehicles to avoid detection by the authorities.
It is reasonable to infer from the knowledge of the officers at the time of
the search that a suspect who has drugs in a bar would take them with him
when he left the bar and hide them in his vehicle in order to avoid
detection on his person if stopped by the police. Thus, the officers’
testimony established the nexus between the place to be searched—the
vehicle—and the items to be seized—the drugs—because it is reasonable to
infer from their testimony that they would probably find the drugs seen by
the informant at the bar in Hoskins’ vehicle.
 If a magistrate was presented with an affidavit in support of an
application for a search warrant containing all the information Meyer had
available to him when he authorized the search of Hoskins’ vehicle, the
magistrate should have found there was probable cause to issue a warrant to
search Hoskins’ vehicle. Furthermore, if Hoskins appealed the magistrate’s
decision to issue the warrant, we have no doubt we would affirm that
decision. Accordingly, under the totality of the circumstances, the
officers had probable cause to search Hoskins’ vehicle. The presence of
probable cause coupled with the exigent circumstances created by the
mobility of the vehicle relieved the officers of the obligation to obtain a
warrant before executing the search.
 B. Ineffective-Assistance-of-Counsel Claims. Hoskins claims his
trial counsel failed to provide effective assistance of counsel by not
moving for disclosure of the identity of the confidential informant or
raising a specific sufficiency-of-the-evidence claim during the motion for
judgment of acquittal. “In order for a defendant to succeed on a claim of
ineffective assistance of counsel, the defendant must prove: (1) counsel
failed to perform an essential duty and (2) prejudice resulted.” Wills,
696 N.W.2d at 22; see also Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). In order to satisfy the
first element, “ ‘counsel’s performance is measured against the standard of
a reasonably competent practitioner with the presumption that the attorney
performed his duties in a competent manner.’ ” State v. Doggett, 687
N.W.2d 97, 100 (Iowa 2004) (citations omitted). Prejudice exists where
“ ‘there is a reasonable probability that, but for the counsel’s
unprofessional errors, the result of the proceeding would have been
different.’ ” Wills, 696 N.W.2d at 22 (citations omitted).
 In regards to Hoskins’ first ineffective-assistance-of-counsel
argument, that his trial counsel failed to move for disclosure of the
identity of the confidential informant, the analysis begins with the
principle that the State can withhold the identity of an informant to
maintain the information flow essential to law enforcement. State v.
Robertson, 494 N.W.2d 718, 722 (Iowa 1993). However, this principle is not
an absolute because “the defendant’s right to prepare and present a
meaningful defense” is weighed against it. Id. at 723; see also State v.
Denato, 173 N.W.2d 576, 578 (Iowa 1970) (stating the balancing test for
disclosure “ ‘depend[s] on the particular circumstances of each case,
taking into consideration the crime charged, the possible defenses, the
possible significance of the informer’s testimony, and other relevant
factors’ ” (citation omitted) (emphasis omitted)).
 We have noted a distinction in applying these principles when a
defendant seeks disclosure of an informant’s identity at a pretrial hearing
on a motion to suppress, rather than at a trial on the criminal charges.
State v. Luter, 346 N.W.2d 802, 809-11 (Iowa 1984). The Supreme Court
recognized this distinction when it stated:

 “We must remember also that we are not dealing with the trial of
 the criminal charge itself. There the need for a truthful verdict
 outweighs society’s need for the informer privilege. Here, however,
 the accused seeks to avoid the truth. The very purpose of a motion to
 suppress is to escape the inculpatory thrust of evidence in hand, not
 because its probative force is diluted in the least by the mode of
 seizure, but rather as a sanction to compel enforcement officers to
 respect the constitutional security of all of us under the Fourth
 Amendment.”

McCray v. Illinois, 386 U.S. 300, 307, 87 S. Ct. 1056, 1060, 18 L. Ed. 2d
62, 68 (1967) (citation omitted).
 It is the defendant’s burden to demonstrate the necessity of
disclosure of the identity of an informant. Robertson, 494 N.W.2d at 723.
Normally, when a magistrate is requested to issue a search warrant, the
magistrate reviews the affidavit in support of the application, determines
the veracity of any informants, and decides whether probable cause exists
to issue the warrant. Thus, in the context of a motion to suppress
evidence found in a search conducted pursuant to a warrant, there is a much
greater burden on the defendant to compel disclosure after the magistrate
has passed on the veracity of the informant than a suppression hearing
based on a warrantless search and seizure. Id. at 723-24. Nonetheless,
the defendant still has the burden to show the need for disclosure of the
informant’s identity, even though the suppression hearing involved a
warrantless search.
 Hoskins contends the disclosure of the identity of the informant was
necessary to ensure a fair hearing on the probable cause issue. Given the
record made in this case, Hoskins’ mere allegations that the informant’s
identity would help ensure a fair hearing on the probable cause issue does
not sustain his burden to overcome the principle that the State can
withhold the identity of an informant to maintain the information flow
essential to law enforcement. The district court had sufficient
information to evaluate the reliability of the informant based on the
informant’s past performance. Additionally, Hoskins has failed to point
out any discrepancies between the information provided by the informant and
the facts. Hoskins does not dispute he was in the bar at the time the
informant said he was in the bar, nor does he dispute his vehicle was
parked at the bar where the informant said it was parked. Finally, the
informant’s information that Hoskins had crack cocaine in his possession
was consistent with the drugs found during the search of Hoskins’ vehicle.
The disclosure of the identity of the informant under these circumstances
would amount to nothing more than a fishing expedition by Hoskins for
information that might help ensure a fair hearing on the probable cause
issue. We have repeatedly declined to authorize such expeditions. Id. at
724.
 Thus, Hoskins has failed to establish a legal basis that would have
required the district court to disclose the identity of the informant.
Consequently, Hoskins’ ineffective-assistance-of-counsel claim fails on
this issue. See Wills, 696 N.W.2d at 24 (holding trial counsel was not
ineffective for failing to raise issues that have no merit).
 Hoskins also claims his trial counsel was ineffective for failing to
raise a specific sufficiency-of-the-evidence claim during the motion for
judgment of acquittal. Hoskins contends there was insufficient evidence
for a jury to find he possessed the drugs with the intent to deliver. When
reviewing a claim based on the sufficiency of the evidence, “we view the
evidence in the light most favorable to the State.” State v. Greene, 592
N.W.2d 24, 29 (Iowa 1999). The verdict must be supported by substantial
evidence. State v. Robinson, 288 N.W.2d 337, 338-40 (Iowa 1980). If a
rational trier of fact could be convinced the defendant is guilty of the
charge beyond a reasonable doubt, the evidence is substantial. Greene, 592
N.W.2d at 29. Therefore, we must determine whether a rational jury could
have found Hoskins was in possession of cocaine base and salt of cocaine
with the intent to deliver beyond a reasonable doubt.
 Turning to the evidence in this case, we are convinced that a
rational jury could have found Hoskins had the intent to deliver the drugs
based on several facts presented at trial. These facts include Hoskins’
statements to Meyer the drugs were his, he was not using cocaine, and there
was not anything going on that he did not know about as to the drug trade.
Additionally, we find support for our conclusion in Meyer’s testimony that
the quantity of drugs, the packaging, and money found on Hoskins were
consistent with a person dealing in drugs. See State v. Adams, 554 N.W.2d
686, 692 (Iowa 1996) (stating proof of intent to deliver drugs “usually
consists of circumstantial evidence and the inferences that can be drawn
from that evidence” and such intent may be inferred from the packaging of
the drugs, large amounts of unexplained cash, and the quantity of drugs).
 Accordingly, Hoskins has failed to establish his trial counsel would
have succeeded in raising a specific sufficiency-of-the-evidence claim
during the motion for judgment of acquittal. Consequently, Hoskins’
ineffective-assistance-of-counsel claim fails on this issue as well. See
Wills, 696 N.W.2d at 24 (holding trial counsel was not ineffective for
failing to raise issues that have no merit).
 V. Disposition.
 Because probable cause and exigent circumstances supported the
warrantless search of Hoskins’ vehicle and his trial counsel was not
ineffective, we vacate the decision of the court of appeals and affirm the
judgment of the district court.
 DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT
AFFIRMED.